UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ALVIN L. McGILL, | ) | |
| | ) | CASE NO. C15-0600 RSM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER OF REMAND |
| | ) | |
| CRUMP LIFE INSURANCE SERVICES, | ) | |
| INC. d/b/a/ TIME A CRUMP CO., a | ) | |
| Pennsylvania corporation, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## I.    INTRODUCTION

This matter comes before the Court *sua sponte*.  The Court has reviewed Plaintiff's Complaint (Dkt. #1-2) and Defendants' Notice of Removal (Dkt. #1).  For the reasons set forth herein, the Court is not convinced that subject matter jurisdiction exists in this Court, and therefore the matter is REMANDED to King County Superior Court.

## II.    BACKGROUND

On April 15, 2015, Plaintiff filed an employment action in King County Superior Court against Defendants.  Dkt. #1-2.  The essential dispute in the matter involves the enforceability of certain non-solicitation agreements.  *Id.*  Plaintiff alleges that he has been a gainfully employed licensed life insurance and securities agent since approximately 1984.  Dkt. #1-2 at ¶ 3.2.  From 1984 to 2009, Mr. McGill developed extensive contacts, business associates,

ORDER
PAGE - 1

business referral sources, and relationships with firms in the insurance and financial services industry. *Id.* at ¶ 3.3. In 2009, Crump solicited Mr. McGill for employment with the company as a Regional Specialist. Thereafter, Crump and Mr. McGill engaged in negotiations concerning, among other things, which of Mr. McGill's prior contacts, business associates, business referral sources, and relationships with firms would be excluded from Crump's non-compete/non-solicit agreement. *Id.* at ¶ 3.4. Mr. McGill signed an initial employment agreement that contained certain exclusions ("the Carveout"); however, in subsequent years, he executed agreements that omitted the Carveout. *Id.* at ¶¶ 3.5-3.13 and Exs. 1-3.

On February 27, 2015, Mr. McGill voluntarily resigned his employment with Crump. *Id.* at ¶ 3.15. Mr. McGill alleges that:

> Defendants responded to Mr. McGill's resignation by, among other wrongful conduct:
>
> 3.18.1 Repeatedly calling, writing, and/or otherwise communicating to Mr. McGill's contacts, business associates, business referral sources, and firms with whom he has relationships, including the Carveout, that Mr. McGill was prohibited from doing business with them;
>
> 3.18.2 Repeatedly calling, writing, and/or otherwise communicating to Mr. McGill's contacts, business associates, business referral sources, and firms with whom he has relationships, including the Carveout, that Crump would take legal action against such individuals and entities if they engaged in business with Mr. McGill;
>
> 3.18.3 Wrongfully publicizing private and confidential information concerning Mr. McGill's compensation structure to third parties, including but not limited to Mr. McGill's current employer;
>
> 3.18.4 Wrongfully and maliciously accusing Mr. McGill of misappropriating Crump property;
>
> 3.18.5 Wrongfully and maliciously causing a Form U5 to be filed with FINRA stating that Mr. McGill was "Discharged" and was "...under internal review for fraud or wrongful taking of property or violating investment related statutes, regulations, rules or industry standards of conduct" thereby directly and proximately causing Mr. McGill's

securities licensure to be put under review and/or otherwise rejected in multiple states, including but not limited to Washington state;

3.18.6 On information and belief, refusing to pay Mr. McGill wages and compensation due and owing to Mr. McGill; and

3.18.7 Causing Mr. McGill's cell phone number to be redirected to Crump.

Dkt. #1-2 at ¶ 3.18. As a result, Mr. McGill filed a Complaint in King County Superior Court seeking injunctive and declaratory relief and unspecified monetary damages, including "double damages" and "attorney's fees." *Id.* at ¶ ¶ 5.1-5.7

At the same time that Plaintiff filed his Complaint, he also requested an *ex parte* hearing for a Temporary Restraining Order ("TRO"). *See* Dkt. #2, Ex. A at 2-4. The hearing was held at 1:30 p.m. before Court Commissioner Henry H. Judson. *Id.* Defendants appeared telephonically at the hearing through counsel. Dkt. #1 at ¶ 3.

After the hearing, Commissioner Judson entered a TRO, temporarily restraining the Defendants from:

contacting/and communicating to Plaintiff's business relations and/or any third party that (1) Plaintiff has violated or is violating contractual duties owing to Defendants, (2) Plaintiff has or is violating local, state, or federal law and/or regulations, (3) Plaintiff has violated Defendants' policies and procedures, (4) Plaintiff was discharged from employment and/or Plaintiff is under investigation by Defendants, or (5) in any other way interfering with Plaintiff's right to do business; provided that Defendants may communicate with regulatory bodies concerning Plaintiff's employment as required by law so long as such communications are truthful.

Dkt. #2, Ex. A at 3. The TRO was entered at 4:22 p.m. on April 15, 2015. Dkt. #2, Ex. A at 2. A Show Cause hearing for a Preliminary Injunction was scheduled for May 1, 2015, before the Honorable Roger S. Rogoff. Dkt. #2, Ex. A at 3.

The next day, on April 16, 2015, Defendants removed the matter to this Court and filed what they have characterized as an "emergency" motion to dissolve the State Court's TRO.

ORDER
PAGE - 3

Dkts. #1 and #7-10.  Defendants' removal is based on an assertion of diversity jurisdiction.

Dkt. #1.  With respect to the requisite jurisdictional amount in controversy, Defendants assert:

> 6. Plaintiff fails to specify a damages sum. *See* Compl. Prayer, ¶¶ 5.1-5.8. Accordingly, this Court may consider whether it is facially apparent from the Complaint that it is more likely than not that the jurisdictional amount of $75,000 is in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). *See also* LCR 101(a) (lawsuit is removable "if a reasonable person, reading the complaint of the plaintiff, would conclude that the plaintiff was seeking damages in an amount greater than the minimum jurisdictional amount.")
>
> . . .
>
> 9. Here, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, based on the following allegations and evidence:
>
> (a) Plaintiff seeks broad injunctive and declaratory relief that would prevent Defendants from enforcing one or more contractual non-solicitation agreements he entered with Crump. Compl. ¶ 4.1-4.3. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also,* 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3708 (2011) ("with regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the liability of the legal claim to be declared"). In this case, the lost revenue from cases that Plaintiff has caused to transfer from Crump and seeks to cause to transfer from Crump, and for which he seeks to avoid liability through a declaratory judgment, exceeds $75,000. (Bock Decl. ¶ 4.)
>
> (b) Plaintiff seeks a broad range of economic and non-economic damages, plus "exemplary damages," all of which are included in a computation of the amount in controversy. (Compl. ¶¶ 4.4-4.10, 5.5.) Non-economic damages for defamation and invasion of privacy can include damages for emotional distress, and, depending on proof, such damages can range from $5,000 to over $100,000. *See, e.g., Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005) (spectrum of damages awards for emotional distress in employment cases "ranges from $5,000 to more than $100,000").
>
> (c) Plaintiff cites RCW 49.52.070 as a basis to recover his "attorney fees and costs," (Compl. ¶ 5.5), which sums are included in a

computation of the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (recognizing that attorneys' fees are included in determining the amount in controversy for diversity jurisdiction, regardless whether fee award is mandatory or discretionary). Washington courts have adopted the lodestar method for calculating reasonable attorney fees that a plaintiff incurs in prosecuting claims under most statutes. *See, e.g., Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 99, 231 P.3d 1211 (2010). In a recent single-plaintiff employment lawsuit that the Eastern District described as "not an extraordinary case," the court approved a lodestar fee of $92,906.50. *Lane v. Grant County*, 2013 WL 5306986, at *7 (E.D. Wash., Sept. 20, 2013).

Dkt. #1 at ¶ ¶ 6-9.

## III.     DISCUSSION

### A. Subject Matter Jurisdiction

Federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). One basis for such jurisdiction is diversity, the grounds upon which Defendants removed this action to federal court. Dkt. #1. Diversity jurisdiction exists "where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different States." 28 U.S.C. § 1332(a)(1). When these diversity prerequisites for federal jurisdiction are met, a defendant who is not a citizen of the state where the suit was originally filed may remove the case from state to federal court. *See* 28 U.S.C. § 1441. The removal statute, however, is strictly construed against removal jurisdiction and the defendant always has the burden of establishing that removal is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (1992).

There are two legal standards that potentially apply to a defendant when he or she seeks to remove a case to federal court. The first applies where the plaintiff claims an amount in controversy on the face of his or her complaint. In those cases, the "sum claimed by the plaintiff controls if the claim is apparently made in good faith," and thus, a defendant can

generally rely on that sum when removing a case to federal court.  *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *see also Gaus*, 980 F.2d at 566 ("Normally, this burden is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement.").  However, a defendant cannot rely on the plaintiffs' stated amount if "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed."  *Singer*, 116 F.3d at 375.

The second standard applies "if it is *unclear* what amount of damages the plaintiff has sought."  *Gaus*, 980 F.2d at 566-67 (emphasis in original).  In those cases, "the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount."  *Id.*; *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).  The defendant must prove that removal is proper by a preponderance of the evidence, and he or she may establish grounds for subject matter jurisdiction by putting forth "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Gaus*, 980 F.3d at 567.

Although Defendants have the burden of establishing grounds for diversity jurisdiction, the Court also has the obligation to satisfy itself that it has subject matter jurisdiction over a case and to address the issue *sua sponte* if necessary.  *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (citing Fed. R. Civ. P. 12(h)(3)); *accord United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 972 (E.D. Cal. 2004) ("The Court 'ha[s] an independent obligation to address *sua sponte* whether [it] has subject-matter jurisdiction.'") (quoting *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999)).  Federal statutory law mandates

ORDER
PAGE - 6

that "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Sparta Surgical Corp. v. Nat'l Ass'n Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998) ("If a district court lacks subject matter jurisdiction over a removed action, it has the duty to remand it . . . .").

This Court must evaluate the amount in controversy as part of its subject matter jurisdiction inquiry. When determining whether the amount in controversy is met in a diversity case, federal courts "look to state law to determine the nature and extent of the right to be enforced." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53, 81 S. Ct. 1570, 6 L. Ed. 2d 890 (1961). The focus of the inquiry is on the face of the complaint itself. *Id.*

**B. Amount In Controversy in the Instant Matter**

The Court now finds that the minimum amount in controversy requirement for subject matter jurisdiction is not met in this case. As a basis for calculating the amount in controversy, Defendants first assert that the Court must look to the value of the object at issue, arguing that the "lost revenue from cases that Plaintiff has caused to transfer from Crump and seeks to cause to transfer from Crump, and for which he seeks to avoid liability through a declaratory judgment, exceeds $75,000." Dkt. #1 at ¶9(a). It is true that the Court must look to the value of the object of this suit to determine the amount in controversy. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). However, Defendants do not identify how many "cases" are at issue, or how the proposed "lost revenue" was calculated or estimated. Rather, Defendants rely on a single, conclusory statement by a corporate official asserting the same. Dkt. #3 at ¶ 4.

Defendants then assert that exemplary damages and attorney's fees requested by Plaintiff demonstrate more than $75,000 in controversy, supporting that argument with a few out-of-District cases. Dkt. #1 at ¶ 9(b)-(c). Defendants do not demonstrate how those cases are

ORDER
PAGE - 7

similar to the instant matter, nor do they provide either Ninth Circuit or Western District case law demonstrating damage awards in similar cases.

For these reasons, the Court finds that Defendants have failed to demonstrate diversity jurisdiction in this Court and the Court will remand the matter to State court.

## IV.     CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) For the reasons discussed above, this case is REMANDED to the King County Superior Court.

2) Having found that this Court lacks jurisdiction over this action, the Court will not address Defendants' pending motion to dissolve the State Court's TRO (Dkt. #7).

3) This matter is now CLOSED.

DATED this 17th day of April 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 8